2353

The STATE, Respondent v. Margaret RUCKER, Appellant.

(459 S.E. (2d) 858)

Court of Appeals

*Asst. Appellate Defender M. Anne Pearce,* of *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Deputy Atty. Salley W. Elliott,* Columbia; and *Sol. Donald V. Myers,* Lexington, *for respondent.*

Heard May 3, 1995.

Decided May 30, 1995; Reh. Den. Aug. 10, 1995.

*Per Curiam:*

Margaret Rucker appeals from her conviction on two counts of unlawful neglect and one count of aggravated assault and battery. We affirm.

The charges against Rucker arose from her care of two nieces. In 1980 or 1981, when the younger niece was approximately six and the older niece was approximately seven, the children were placed by their mother in Rucker's care. The children stayed with Rucker off and on until they were taken into protective custody by the Department of Social Services Division of Child Protection (DSS) in 1988. At the time they were taken into protective custody, the children were living with their mother in a motel. DSS began visiting Rucker's home beginning in 1980 and continuing until 1988. A DSS caseworker described the Rucker home as unkempt and filled with a foul odor. Apparently, the home had no running water and the family used what was described as a toilet a "p-pot" which was kept on the back porch. The caseworker described the children as in a "state of neglect."

The nieces testified they were subjected to severe abuse by Rucker. Both girls testified they were subjected to beatings with a plastic bat, sometimes while totally unclothed. The older niece, who was apparently singled out for most of the abuse, was whipped by Rucker with a drop cord between her legs while unclothed. Rucker also forced the younger niece to whip the older niece with the drop cord. The older niece testified that on at least one occasion Rucker inserted her fingers into her vagina and anus, and that on several occasions Rucker brought home three men who raped the niece while Rucker watched and laughed. While Rucker did the cooking for the family, the older niece once attempted to cook grits.

The niece made a mistake while cooking and poured the grits into the p-pot, which contained urine at the time. Rucker forced the niece to remove the grits from the p-pot, cook them, and eat them.

On two occasions Rucker threatened the older niece with death, once by hanging and the other time by beheading. On the first occasion, Rucker prepared a noose, put it around the child's neck, placed the rope over a tree, and pulled on its end. On the second occasion, Rucker forced the child to place her head on a stump in the yard and held a raised axe over her while the other children voted whether she should live or die. When the older niece was seriously burned on her arm, Rucker would not allow her to keep the bandages and salve on the burn placed there by the school nurse. Each day the bandage was applied at school, and, after returning home, the child was required to remove it and scrape off the salve. This resulted in a permanent scar on the child's arm. On another occasion Rucker accused the older niece of stealing, and threw her out of the house naked. Rucker then threw rocks at her and required the younger niece to do likewise.

While the State presented evidence that the children were in Rucker's care from 1980 or 1981 through 1988, Rucker was indicted only for those acts occurring between January 1985 and December 1988. Rucker, however, contended she had the children only from 1981 through 1982, and that she was in Connecticut for a portion of the time covered in the indictment. While Rucker testified she sometimes disciplined the children with a toy baseball bat in 1981 and 1982, she denied the other incidents as described by the children occurred during the period she had custody of the children. Rucker presented other witnesses who testified that the children did not live with Rucker during the period of the indictment.

Rucker was convicted of child neglect of both nieces. She was acquitted of the charge of aggravated assault and battery of the younger niece, but was found guilty of aggravated assault and battery of the older niece. On appeal, Rucker does not challenge the convictions for child neglect; rather, she argues only that the trial court erred in refusing to charge simple assault and battery as a lesser included offense of aggravated assault.

"Assault and battery of a high and aggravated nature is the unlawful act of violent injury to another accompanied by circumstances of aggravation such as the infliction of serious bodily injury, great disparity in the physical conditions of the parties, and the purposeful infliction of shame and disgrace." *State v. Small*, 307 S.C. 92, 413 S.E. (2d) 870 (Ct. App. 1992); *accord State v. Foxworth*, 269 S.C. 496, 238 S.E. (2d) 172 (1977). Simple assault and battery is an unlawful act of violent injury to another person unaccompanied by any circumstance of aggravation. *State v. Jones*, 133 S.C. 167, 130 S.E. 747 (1925); *Small.*

Rucker argues she was entitled to a charge on the lesser included offense, because in almost every instance of lawful, corporal punishment, there is a disparity between the age or sexes of the parties and that such punishment is often intended to inflict shame and disgrace. Rucker contends the jury may have viewed the whipping with the plastic baseball bat as not so excessive as to rise to the level of assault and battery of a high and aggravated nature, thus supporting a charge on simple assault. We disagree.

When the evidence is susceptible of the inference that the defendant is guilty of only the lesser included offense, the trial judge must charge the lesser offense so the jury can choose between the lesser and the greater. *State v. Lambright*, 279 S.C. 535, 309 S.E. (2d) 7 (1983). However, Rucker's contention that the jury might have disbelieved the State's evidence as to the circumstances of aggravation and on the remaining evidence found appellant guilty of the lesser offense of simple assault and battery does not entitle her to have the lesser offense submitted to the jury. *State v. Foxworth*, 269 S.C. 496, 238 S.E. (2d) 172 (1977). "[T]he presence of evidence to sustain the crime of a lesser degree determines whether it should be submitted to the jury and the mere contention that the jury might accept the State's evidence in part and might reject it in part will not suffice." *Id.* (quoting *State v. Funchess*, 267 S.C. 427, 229 S.E. (2d) 331 (1976)).

While Rucker did testify she disciplined the children with a plastic bat, she stated this discipline occurred in 1981 and 1982. As to the time period charged in the indictment, Rucker in effect offered an alibi defense, contending only that she did not have custody of the children during that period of time.

Rucker presented no evidence that, during the relevant time period, she committed some act that could be viewed by the jury as a simple assault. Rucker therefore was not entitled to a jury charge on simple assault. *See, e.g., State v. Drayton,* 293 S.C. 417, 361 S.E. (2d) 329 (1987), *cert. denied,* 484 U.S. 1079, 108 S.Ct. 1060, 98 L.Ed. (2d) 1021 (1988) (defendant not entitled to robbery charge as a lesser included offense of armed robbery where, under State's version of the facts, the defendant was guilty of armed robbery, and, under defendant's version of the facts, defendant was innocent of any robbery charge); *State v. Hartley,* 307 S.C. 239, 414 S.E. (2d) 182 (Ct. App. 1992), *cert. denied* (June 3, 1992) (defendant charged with murder was not entitled to a charge of manslaughter as a lesser-included offense where defendant denied killing the victim and thus there was no evidence showing the defendant killed the victim without malice).

Accordingly, for the foregoing reasons, Rucker's conviction is hereby

Affirmed.

HOWELL, C.J., GOOLSBY, J., and HOWARD, A.J., concur.